THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **CHARLES JENKINS-QUEEN,** *Individually and on behalf of all other similarly situated current and former employees,* | |
| Plaintiff, | |
| v. | NO. 3:18-cv-01294 Judge Richardson/Holmes |
| **MEDICAL NECESSITIES AND SERVICES, LLC**, *a Tennessee Corporation* | FLSA Opt-In Collective Action **JURY DEMANDED** |
| Defendant. | |

**JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT**

Following extensive litigation and extensive, arms-length negotiations, Named Plaintiff Charles Jenkins-Queen, individually and on behalf of the Opt-In Plaintiffs who joined this lawsuit, and Defendant Medical Necessities and Services, LLC ("Defendant" or "Medical Necessities") reached a settlement in the above-captioned case. The Parties now respectfully request that the Court approve their negotiated settlement of this Fair Labor Standards Act ("FLSA") collective action seeking alleged overtime and other compensation and dismiss this case with prejudice. As detailed below, the Court should grant the Parties' Motion because this settlement is a fair, adequate, and reasonable resolution of the Parties' bona fide dispute as to liability and alleged damages under the FLSA.

**I.     Relevant Procedural and Factual History**

Named Plaintiff Charles Jenkins-Queen ("Named Plaintiff"), individually and on behalf of others similarly situated ("Plaintiff and Opt-In Plaintiffs" or collectively "Plaintiffs"), filed the

1

Complaint in this action on November 16, 2018. [ECF No. 1] Named Plaintiff alleged he was not paid for all hours worked over forty (40) in each workweek. Named Plaintiff also alleged that Medical Necessities violated the Fair Labor Standards Act ("FLSA") by requiring or permitting him to work off the clock during one or more of the following scenarios: (1) during meal breaks; and (2) during travel time. Named Plaintiff further alleged that he was required to work "on call" for a set amount of pay regardless of the number of hours worked. On June 19, 2019, Named Plaintiff filed his First Amended Complaint. [ECF No. 33]

On February 22, 2019, Medical Necessities filed its Answer to the original Complaint [ECF No. 21] and on July 2, 2019, Medical Necessities filed its Answer to the First Amended Complaint. [ECF No. 36] In these pleadings, Medical Necessities denied the claims and allegations asserted in the Complaints and denied that it had violated the FLSA.

On August 15, 2019, Named Plaintiff filed a Motion for Conditional Certification, requesting that the Court conditionally certify a collective consisting of all hourly paid driver techs of Medical Necessities who had worked for Medical Necessities during the past three years. [ECF No. 37] On September 13, 2019, the Parties stipulated to conditional certification. [ECF No. 40] On October 3, 2019, the Court entered an Order granting the Parties' Stipulation as to conditional certification. [ECF No. 46] Subsequently, notice of the lawsuit was sent to the putative collective class of 15. Three (3) putative class members submitted consents to join the Action.

The parties have engaged in extensive discovery, including written discovery, production of extensive pay data, time data and other documents, which totaled over 2,500 pages. The Parties also engaged in their own extensive fact investigations.

Finally, after the fact intensive investigation, the Parties engaged in further arm's-length negotiations and were able to reach an agreement to settle all claims in the Action.

Defendant denies the claims asserted in this Action and makes no admission whatsoever of liability, wrongdoing, or violation of the FLSA or any other statute. Defendant nevertheless desires to settle the case on the terms set forth in the Settlement Agreement for the purpose of avoiding the burden, expense, and uncertainty of continuing litigation, and for the purpose of putting to rest the controversies engendered by the litigation.

The Parties believe that the settlement reached in this matter represents a fair and reasonable compromise given the disputed matters at issue and the risks of continuing forward with litigation on the merits and on decertification.

## II. Terms of the Proposed Settlement

### A. Settlement Amount and Allocation

The Settlement Agreement provides that Medical Necessities will pay the total gross sum of $29,500.00, which includes Plaintiffs' attorneys' fees and costs. The details of the agreement are set forth in the executed Settlement Agreement, which is attached as Exhibit A. From the gross settlement amount, the Named Plaintiff and all Opt-Ins will receive an amount of overtime and other compensation for each week they worked for Medical Necessities during the recovery period, with no further deductions for fees or costs.

Plaintiffs' Counsel hereby moves that its fees and costs be approved by the Court. Plaintiffs' Counsel spent significant time and resources litigating this matter through pleadings, discovery, and settlement negotiations. Plaintiffs' Counsel will spend more hours finalizing this settlement and distributing the settlement proceeds. The amount requested by Plaintiffs' Counsel will include all costs. Plaintiffs' Counsel submits that the fee request represents a fraction of the time Plaintiffs' Counsel incurred in connection with litigating this matter. Finally, Defendant has agreed to pay this amount as fees and costs and does not oppose Plaintiffs' Counsel's request.

### B. Release of Claims

In exchange for the settlement payments to be made under the Settlement Agreement, Plaintiffs have agreed to dismiss this litigation with prejudice. Further, the Named Plaintiff, on behalf of his heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, have agreed to release and discharge Medical Necessities (and related individuals and entities as described in the Settlement Agreement) from any and all known and unknown claims for overtime compensation, minimum wages, liquidated damages, penalties and interest under the FLSA or applicable state laws (including statutory and common law claims for breach of contract, unjust enrichment or other common law claims relating to wage and hour issues), and other non-FLSA claims arising out of or in any way connected with his employment with Defendant.

Similarly, each Opt-In Plaintiff, on behalf of his/her respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, will release and discharge Medical Necessities (and related individuals and entities) from all known and unknown claims for overtime compensation, minimum wages, liquidated damages, penalties and interest under the FLSA or applicable state laws (including statutory and common law claims for breach of contract, unjust enrichment or other common law claims relating to wage and hour issues) arising from the Opt-In Plaintiffs' employment with Medical Necessities.

## MEMORANDUM OF LAW

The Parties have reached a settlement that fairly and reasonably resolves the Parties' claims and defenses, and was negotiated at arm's length between counsel for all parties. As such, the Court should enter an order approving the settlement accordingly.

**I.     The Proposed Settlement Fairly and Reasonably Resolves the Parties Claims and Defenses.**

   **A.     Standard for Approval of Settlement of FLSA Collective Actions**

Although it is not clear in this circuit that court approval of a settlement of FLSA claims is required in every circumstance in order to be binding, parties are certainly free to seek court approval of a private lawsuit brought under Section 216(b) when the parties present the district court with a proposed settlement, and the district court enters a stipulated judgment approving the fairness of the settlement. *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 11th Cir. 1982).

In reviewing a settlement of a private FLSA claim, the court must scrutinize the proposed settlement for fairness and determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1355; *accord Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 11-400, 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012); *Wills v. Cellular Sales of Tenn., LLC*, No. 12-391, 2014 WL 8251539, at *1 (E.D. Tenn. Aug. 18, 2014); *Simmons v. Mathis Tire & Auto Serv., Inc.*, No. 13- 2875, 2015 WL 5008220, at *1 (W.D. Tenn. Aug. 20, 2015). When it appears that a settlement "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages[] that are actually in dispute," the Court should "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. Additionally, a court presiding over an FLSA suit "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

   **B.     A Bona Fide Dispute Exists Over Liability and Damages.**

In reviewing the settlement of a plaintiff's FLSA claims, the district court must "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA

5

requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'" *Rotuna v. W. Customer Mgmt. Grp. LLC*, No. 09-1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010). The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id; accord, Ochs v. Modern Design, Inc.*, No. 14-635, 2014 WL 4983674, at *2 (N.D. Ohio Oct. 6, 2014).

A bona fide dispute clearly exists in this case that was heavily litigated for over one year. Plaintiffs claim they were not paid for all hours worked over forty (40) in each workweek. Plaintiffs also claim they were required or permitted to work off the clock during 30-minute meal breaks, during compensable travel time, and during "on call" time in which Plaintiffs alleged they worked for a set amount of pay regardless of the number of hours worked. Plaintiffs contend that they are entitled to unpaid time and/or overtime for these hours worked. Defendant specifically denies these claims and further denies that Plaintiffs are owed any additional overtime or other wages under the FLSA or any other laws. Defendant contends that Plaintiffs were required to perform all work on the clock and they were required to take a full 30-minute meal break or notify their supervisor if they could not take a break so that they could be compensated and that Defendant's timekeeping system complies with the FLSA. In addition to their many disputes regarding liability and decertification of the collective, the Parties had opposing views on other damages components such as: (1) how to calculate damages, (2) whether liquidated damages were available; and (3) whether a two-year or three-year limitations period applied. Defendant disputes that Plaintiffs ever worked off the clock given the policies and procedures it has in place to capture all of the time actually worked by the Plaintiffs, the fact that Defendants paid overtime on a regular

6

basis (including overtime in excess of that required by the FLSA), and that no one ever complained of having to work off the clock.

Although the Parties continue to firmly believe in the merits of their respective claims and defenses, given the time and expense associated with full-blown litigation and discovery, and the uncertainty of dispositive motion practice, decertification, and trial, the Parties agree that a compromise is appropriate at this stage of the litigation. They desire to resolve this case by way of a negotiated settlement payment by Defendant in exchange for releases of claims by Plaintiffs and dismissal of this case with prejudice in order to avoid the time and expense inherent in continued litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("Thus, when the parties [to the litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.")

### C. The Settlement Is Fair and Reasonable.

In addition to resolving a bona fide dispute between the Parties, the settlement achieved is fair and reasonable and should be approved for several reasons. First, the proposed settlement arises out of an action for alleged unpaid overtime and other wages brought by Plaintiffs against their employer. While the amount each Plaintiff obtains will necessarily depend on the number of workweeks he or she worked during the limitations period, the settlement is based upon a reasonable number of unpaid meal breaks, travel time, and unpaid work time and/or overtime each week during the recovery period. Plaintiffs believe such a compromise is reasonable under the circumstances and in light of the defenses and risks of litigating this matter. Thus, Plaintiffs and Plaintiffs' Counsel believe this is a fair recovery considering that Defendant had: (1) reasonable arguments for why the Plaintiffs should get no recovery at all; (2) a strong chance of having the

7

collective decertified – with the claims of all but the Named Plaintiff being dismissed entirely; (3) legitimate arguments that liquidated damages were not available; (4) legitimate arguments that a two-year look-back period would apply; and (5) arguments that even had Plaintiffs prevailed the damages would have been very low.

Second, there is no collusion that occurred between the Parties or their counsel. *See Schneider v. Goodyear Tire & Rubber Co.,* No. 13-2741, 2014 WL 2579637, at *2 (N.D. Ohio June 9, 2015) (considering the risk of fraud or collusion between the parties in determining whether to approve an FLSA settlement and concluding that because the parties had engaged in court-supervised negotiations, there was no such risk). Rather, this settlement was reached as a result of arm's-length negotiations between the Parties through experienced attorneys.

Third, during the litigation and settlement of this action, Plaintiffs were represented by counsel who are experienced in handling wage and hour collective actions. Plaintiffs' Counsel has the experience to assess the risks of continued litigation and benefits of settlement and have done so in this Action. Plaintiffs' Counsel also has a long-standing multijurisdictional practice representing both employees and employers in similar FLSA collective litigation. Defense counsel is likewise experienced in defending similar FLSA collective litigation and claims. Counsel for both parties have advised their respective clients regarding the settlement and they have recommended judicial approval. Courts routinely give those recommendations weight. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as an indication of fairness).

Fourth, the range of possible recovery in this case was uncertain. As noted above, Plaintiffs were at risk of recovering little or nothing at all due to the likelihood of decertification and

8

testimony undermining the merits of their claims. Moreover, the Parties had very divergent positions on liability overall and damages.

Fifth, the proceedings have advanced through initial pleadings, fact investigation and part of the discovery period, permitting the Parties and their experienced counsel to: (i) collect, obtain, and review evidence; (ii) review and assess written discovery responses, data and other information; (iii) assess the evidence provided in support of the claims or defenses in this matter; (iv) evaluate their claims and defenses; (v) understand the scope of potential damages; and (vi) engage in negotiations with the mutual understanding that continuing toward dispositive motion practice and a decertification motion process would be a difficult, costly, and uncertain undertaking.

Sixth, the complexity, expense, and likely duration of the litigation should a settlement not have been reached weighs heavily in favor of finding that this settlement is fair and reasonable. Without question, if the case had not settled, the Parties would have spent significant time and resources briefing decertification and dispositive motions. After the resolution of these motions, the Parties would have had to engage in expensive and extensive efforts to prepare pretrial submissions and prepare for trial in this matter while those motions were pending and, eventually, may have faced the prospect of an expensive, lengthy trial as well as likely post-trial motions and appeals and post-trial motions. Rather than take this path, the Parties directed their efforts toward an informed, efficient resolution of Plaintiffs' claims. While a number of issues remain unresolved in this litigation, the expansive discovery and fact investigation processes enabled counsel to assess the respective strengths and weaknesses of their case and reach the conclusion that settlement is in the Parties' best interests. The settlement eliminates the inherent risks both sides would face if

9

this case were to continue. Under these circumstances, the settlement is fair, reasonable, and adequate for Plaintiffs, and the Court should approve it.

## II. Plaintiffs' Counsel's Requested Award of Attorneys' Fees and Costs Is Reasonable and Should Be Fully Granted.

The proposed award of attorneys' fees and costs is more than fair, reasonable, and should be approved. Indeed, the attorneys' fees component of the settlement does not fully compensate Plaintiffs' Counsel for the time and effort spent in litigating this matter, as Plaintiffs' Counsel sought to reserve as much of the settlement payment as possible for distribution to Plaintiffs. Defendant does not oppose the payment of the agreed-upon amount of Plaintiffs' Counsel's attorneys' fees, litigation expenses, and costs from the settlement amount. Moreover, "the attorneys' fees provision[] of the . . . FLSA exist to enable Plaintiffs to employ reasonably competent lawyers without costs to themselves if they prevail and, thereby, to help ensure enforcement of the substantive provisions of the FLSA." *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.. Inc.*, 732 F.2d 495, 502 (6th Cir. 1984).

In the Sixth Circuit, the only requirement for awards of attorneys' fees and costs to class Plaintiffs' Counsel is that the award "be reasonable under the circumstances." *Rawlings v. Prudential-Bache Property*, 9 F.3d 513, 516 (6th Cir. 1993); *see also Blum v. Stenson*, 465 U.S. 886, 893 (1984). As the United States Supreme Court has recognized, without the class/collective action mechanisms, individuals with small claims lack the economic resources to vigorously litigate their rights. Without compensation to those attorneys who are willing to undertake the inherent complexities and unknowns of class and collective action litigation, enforcement of the federal and state laws would be jeopardized. *See Eisen v. Carlisle and Jacqueline*, 417 U.S. 156,

161 (1974). Thus, attorneys taking on class and collective actions enable litigants to pool their claims, thus providing a huge valuable service to the judicial process and society as a whole.

As stated above, the complexity of this case and the novelty of the issues presented required a high level of skill and knowledge regarding wage and hour class collective action law. It is respectfully submitted that Plaintiffs' Counsel have unique skills and qualifications in the area of wage and hour class action litigation, and maintain nationwide class and collective action wage and hour practices. As a result, Plaintiffs' Counsel understand first-hand the risks, difficulties and costs associated with actually preparing and taking a wage and hour class action to trial, as opposed to negotiating a favorable compromised settlement agreement.

Plaintiffs' attorneys' fees and costs are reasonable given the result obtained, time expended, and time yet to be expended in administering the proposed settlement. *See Mclain et. al. v. First Acceptance Corp.*, No. 3-17-cv-00408 [ECF No. 57] (M.D. Tenn. 2018) (Crenshaw J./Holmes M.J.) (Order approving attorneys' fees and costs approximating 66% of the total settlement amount); *Wilson et. al. v. MMR Senior Alliance Corp et. al.*, No. 3:17-cv-1412 [ECF No. 56] (M.D. Tenn. 2018) (Crenshaw J./Holmes M.J.) (Order approving attorneys' fees and costs approximating 50% of the total settlement amount). This case was actively litigated, and Defendant does not challenge that the attorneys' fees and costs award reached as part of this settlement is fair and reasonable.

## CONCLUSION

This FLSA collective action settlement is a product of an arm's-length negotiation between the Parties and their counsel, which resolves a bona fide dispute over allegedly owed overtime wages. As such, the settlement is fair and reasonable and provides Plaintiffs with significant monetary relief. Accordingly, the Parties jointly and respectfully request that this Court approve

the Parties' settlement agreement and the distribution of the settlement amount to Plaintiffs in full as described above. Further, Plaintiffs' Counsel request that this Court award reasonable attorneys' fees and litigation costs in the amount requested. Finally, the Parties jointly request that this action be dismissed with prejudice.

Respectfully submitted,

/s/ *J. Russ Bryant*
Gordon E. Jackson (#008323)
James L. Holt, Jr. (#12123)
J. Russ Bryant (#33830)
Paula R. Jackson (#20149)
Nathaniel A. Bishop (BPR # 35944)
Jackson, Shields, Yeiser & Holt
262 German Oak Drive
Memphis, TN 38018
Telephone: (901) 754-8001
Facsimile: (901) 754-8524
gjackson@jsyc.com
jholt@jsyc.com
rbryant@jsyc.com
pjackson@jsyc.com
nbishop@jsyc.com

and

Nina Parsley (TN BPR #23818)
PONCE LAW
400 Professional Park Drive
Goodlettsville, TN 37072
nina@poncelaw.com

*Attorneys for Plaintiffs*

/*s/ Margaret R. T. Myers (with permission)*
Thomas Anthony Swafford (TN BPR #017578)
Margaret R. T. Myers (TN BPR #020506)
Joshua Cumby (VA Bar # 82021)
Adams and Reese LLP
424 Church Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 259-1490
tony.swafford@arlaw.com
margaret.myers@arlaw.com
joshua.cumby@arlaw.com

*Attorneys for Defendant Medical Necessities*

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Thomas Anthony Swafford (TN BPR 017578)
Margaret R. T. Myers (TN BPR #020506)
Joshua Cumby (VA Bar # 82021)
Adams and Reese LLP
424 Church Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 259-1490
tony.swafford@arlaw.com
margaret.myers@arlaw.com
joshua.cumby@arlaw.com

and

Nina Parsley (TN BPR #23818)
PONCE LAW
400 Professional Park Drive
Goodlettsville, TN 37072
nina@poncelaw.com

/s/ J. Russ Bryant